The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having to amend a form of business for the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw a net and give their attention. For the Court is now sitting. Godspeed, United States, and this Honorable Court. All right, please be seated. Ms. Hoffman, we'd be happy to hear from you and the United States v. Rice. Thank you, Your Honor. Is it permissible if I remove my mask or would you prefer I leave it on? It's fine. You can do whatever is most comfortable for you. Thank you. Good morning, Your Honors. May it please the Court. Megan Hoffman on behalf of Mr. Dennis Rice. North Carolina law authorizes an assault offense to be charged upon a mens rea of culpable negligence. And when the North Carolina State Legislature wants an additional intentional element to be present in an assault offense, it has clearly delineated that in the statute. The APIS statute here was not created until 2004, which was four years after State v. Jones, in which the North Carolina State Supreme Court determined that North Carolina assault convictions can be committed with culpable negligence. Under that formulation, the legislature clearly intended the statute to apply broadly. And because an APIS offense can be committed with culpable negligence, it is not a crime of violence as this Court has recognized in Simmons and as the Supreme Court recently recognized in Borden. This Court should find that an APIS offense is not a crime of violence. What crime do you say can be committed with culpable negligence? The assault inflicting physical injury by strangulation, Your Honor. The APIS offense is the offense that weird as a hermeneum can be committed with culpable negligence. As State v. Jones, the North Carolina Supreme Court stated in State v. Jones that culpable negligence is an element, or excuse me, that assault can be met with the culpable negligence mens rea. The APIS offense has the additional... So I don't have any difficulty with what you're saying when you say assault can be committed with culpable negligence. But of course, now we're dealing with the whole statute, which is assaults another person and inflicts physical injury by strangulation. And under Al Vinson's decision and some others, you have to look at all the elements of the statute. If we looked at just assault, we'd be looking at one element, and I would agree with you. But I think we're required by our president to look at the statute, every little bit of it. I agree, Your Honor, and I don't disagree that the APIS offense has this additional definition of the method of strangulation, of the method of the assault being completed. And that's an element, is it not? It is, Your Honor. And the way that the North Carolina jury instructions have defined that element is that the defendant assaulted the victim by intentionally and without justification or excuse, and then it says strangled the victim. As this court analyzed that particular instruction, it's identical in its formulation to the instruction in Simmons and to the instruction in Vinson. The only difference is that here, we happen to have by strangulation, whereas in Vinson or Simmons, it was a different method to accomplish the assault. Isn't that important? Doesn't by strangulation inform the elements? If we give that some meaning, we have to decide whether that can be conceivably committed without intent. And I've read the briefs and talked about the kind of hypotheticals, but those are pretty out there. And there's no cases, and I realize cases aren't determinative, but I'm just trying to figure out how we can give any real significance to by strangulation and then consider that it can be committed negligently or recklessly. Your Honor, I think an analogy here would be to Simmons, where the assault can be committed by use of a deadly weapon. That is an intentional act, but it can also be committed with culpable negligence. Wasn't Simmons a vehicular case? Simmons was a vehicular case. It's pretty easy to contemplate someone can negligently or recklessly operate a vehicle. Those things happen with some degree of frequency. Strangulation in a way that's not intentional. I can't even imagine it, and certainly can't imagine it being prosecuted. And the fact that there's no cases seems to at least be somewhat relevant to that. Your Honor, I think I have a couple of responses to that. First, I would go back to note that this is a relatively new statute, and so the fact that it is not in front of the North Carolina Supreme Court yet and in a published opinion is really not that surprising. But I want to get back to the follow-up on Judge Quattlebaum's. How does one strangulate someone with an inflicted physical injury on someone? How does one do that negligently? I mean, the whole idea of negligent strangulation inflicting physical injury seems to me a contradiction in terms. Your Honor, I would respectfully disagree with that. I think that we cited in our reply brief State v. O'Carroll, which was a New Jersey case in which the court noted— A New Jersey case? It was a New Jersey, yes, Your Honor. It was a New Jersey state case, excuse me, in which the judges noted that in many of their strangulation cases that had been charged that way, I think approximately like 40 percent had come back as reckless actions rather than intentional actions. What about North Carolina? Because the government brought forward 23 North Carolina cases addressing assault by strangulation, and all of those 23 cases involved knowing of purposeful strangulation, and they were submitted to the jury on that basis. Your Honor, I think that's true, and I think that that is the same reasoning that the government did in Simmons and in Vinson, that presenting a mountain of cases does not resolve this reasonable probability question. And I would note that under Borden, for example— Excuse me, but why doesn't it resolve that question? Because in the Battle case, we said that you can't just talk about what theoretically is possible. You have to show actual prosecution of the relevant offense in cases in the manner that you claim. Now, this is practical, and when one side says, here are 23 cases, and they've all involved assault by strangulation, and they were all submitted to the jury under a knowing of purposeful strangulation standard, none involved negligent strangulation. How do we get around that? Your Honor, I think that we go back to the Supreme Court's recent case in Borden, in which the government in Borden made the same position, made the same argument that it's making here, that the state court had repeatedly only upheld convictions of intentional conduct, of knowingly violent conduct. And the court in Borden confirmed that under the categorical approach, the existence of such cases is neither here nor there. Yes, but what I'm discussing with you—I mean, of course, I quite agree with Borden, and if I didn't, it still wouldn't make any difference. But I realize that Borden required purposeful or knowing mens rea. And that is exactly, under Borden, how all of these 23 cases were submitted to the jury. They were submitted on knowing of purposeful strangulation, which conforms—that conforms with Borden. Your Honor, I again respectfully disagree. In Borden, one of the reasons that the court held that reckless conduct doesn't fall within the Elements Clause is because—and the court in Borden gave examples of cases that might defy common sense, which I think is what the court is struggling with here. But Borden, for example, gave the example of a dad taking his daughter go-karting and forgot to strap her in, and when the child was injured, he was charged with reckless assault. There are mechanisms in which the cases can be understood that way, and I think we provided some of those examples in our briefing. In the North Carolina Supreme Court, for example, there was State v. White, where a child ended up swallowing plastic, and the court noted that he strangled to death on the plastic. And it was—they ended up finding that it could have been a reckless homicide because the mother knew the child liked to eat the plastic. And, you know, had that child not— But I'm talking about this particular statute. And so you start with the idea that negligent strangulation, which inflicts physical injury, that doesn't seem to me something that can be done negligently. And then when you get down to what is actually being charged under this statute, not under this analogous situation or that analogous situation, but under this statute, both the North Carolina jury instructions and the North Carolina cases talk about intentionality. Well, Your Honor, the cases and the instructions, for example, do talk about intention because North Carolina assaults do have to be intentional, but they can be committed with culpable negligence. Because the case law was formed under the common law, the statute itself doesn't speak to any sort of intent unless the legislature wants it to. So in Townsend, for example, the court did, in fact, add a specific—excuse me— a specific mens rea element, which was specific intent to kill. Well, and the jury instructions didn't intentionally modify strangulation, not assault it. It modified strangulation, didn't it? But that is the case as well for Simmons and for Vinson. The instruction is identical. And I know that we are caught up here in the semantics, but I think that the way that the legislature drafted the statute here is that the intent element can be met with culpable negligence. If this court looks at North Carolina's other assault statutes, North Carolina doesn't have a general felony assault statute, and so each of the assaults are very specific acts. So, for example, there's a malicious castration, which includes malice aforethought with intent to murder and maim. We know in Townsend there was an intent to kill requirement. For malicious throwing of acid, there has to be malice aforethought with intent to murder, maim, or disfigure. For malicious assault in a secret manner, which this court has ruled on, that included a specific intent to kill, and that case was an unpublished case, United States v. Smith, from 2016. But in each of those instances, there was that separate—excuse me— element of a specific intent to kill, a specific intent to maim, and here we don't have that. We have to presume that the legislature knew what it was doing. You say there's not a specific intent to kill or maim, but the statute talks about inflicting physical injury, which would seem to be right at the heart of the elements clause, or the force clause. Your Honor, Townsend actually required the exact same element, and in Townsend, this court concluded that the specific intent element went to the specific intent to kill, not additionally adding a specific intent to commit physical injury. And so here, I think that it's identical to the Townsend physical injury element that this court did not extend an additional mens rea to. The actus reus of strangulation here does not import a new mens rea onto the act of strangulation. But the addition of strangulation has to be given some significance, and sure, if you had said strangulation with intent, maybe we wouldn't even be here. But I don't think you have to use those words if the conduct that is specified as an additional element, or this is my question, if the conduct that is specified as an additional element necessarily requires intent. Assume that was the case. I know you disputed it. But if it necessarily requires intent, wouldn't that be enough that we would say you can't commit this crime negligently or recklessly? If you assume with me right now strangulation can only be committed intentionally or purposefully, wouldn't that end your argument? Your Honor, I don't know because, first of all, I think as I noted the North Carolina Supreme Court and the state's courts haven't really addressed this issue other than in State v. Lanford, in which the court said that they were not boxing in the statute to any particular method of strangulation. And so I think that it's difficult for me to hypothesize here. I'm not asking you right now to say whether we can come up with something, but if we just take as an assumption, and believe me, I know you disagree with it, so I'm not trying to put words in your mouth, but if you take as an assumption that strangulation must be committed purposefully or intentionally, wouldn't that prevent your appeal from succeeding? I think if the statute was clear as it was in Townsend that there was a specific intent to commit strangulation. So you're saying conduct, even if you assume it can only be committed intentionally and purposefully, that would not be enough to resolve the appeal? Yes, I think that's correct, Your Honor, and I think the reason that I say that is because of the way that North Carolina has drafted its other assault statutes. Can you give me just an example of one case, just one case that has been submitted to the jury under this statute under a recklessness or culpable negligence standard? I'm just looking for one case. In North Carolina, Your Honor, I do not have a case, and I think we acknowledge that. Well, doesn't that matter if you can't even think of a single case under this statute that has been submitted to the jury on a negligence? And you've got 23 cases where the men's ray has been pellucidly clear that it required intent or knowledge. And so we get farther and farther away from what actually happens as a practical matter on the ground, and we ascend into the high clouds of theory and say, well, this is analogous or this might happen and everything. But when we get down to it, you've got 23 cases where the men's ray has been submitted clearly as knowing or intentional. They don't fool around. There's no ambiguity about those instructions. There's a men's ray of knowledge, and you've got no cases, it's not a one that bolsters the theory in terms of what actually happens on the ground. That's the problem here. Your Honor, I see my time is up. May I answer your question? Would you like to reserve some time for rebuttal? I would, Your Honor. Okay. Thank you. Yes. Mr. Enright. Thank you, Your Honor. May it please the Court, Anthony Enright for the United States. The district court properly held that assault inflicting injury by strangulation under North Carolina law qualifies as a crime of violence under the sentencing guidelines. I don't think there's any dispute that it requires a degree of force that matches the force clause, and it also requires a men's ray that's sufficient under the force clause because this court looks at the minimum conduct that the state would actually punish, and that minimum conduct requires at least purpose or knowledge, what the law ordinarily refers to as intent or actual intent. And a darn good indicator of that is two decades' worth, almost two decades' worth of an unbroken line of decisions, applying it exclusively to unequivocally purposeful or intentional conduct. Now, as Judge Qualabao mentioned, that's not always determinative when you have the plain language of a statute speaks directly to it. If the statute said assault inflicting injury by negligent strangulation, that would be a much more difficult case for us, and I think it would be more difficult for the defense if it said intentional strangulation or purposeful strangulation. We don't have that here. And it's also not determinative when the state's highest court has said unequivocally or held, hey, it applies to this scenario. That was the situation in Apparatio Sordia, and it was the situation in Sammons. It wasn't the state's highest court, or Sammons, in Simmons. The state's highest court hadn't said it, but an intermediate appellate court had addressed a sufficiency of the evidence challenge to a different assault statute and said, well, it satisfies the culpable negligence standard, so that's enough. We don't have that here. You say we don't have that here because Jones is referring to assault generally and there's no appellate court that approves or endorses a negligent or reckless charge with respect to assault by strangulation? There's no appellate court that endorses that with respect to this offense, assault inflicting injury by strangulation. On Jones, I think we agree, but I want to qualify it a bit, because Jones held that there are some assault offenses that require at least general intent, which is awareness of the facts that make your conduct a crime, not culpable negligence, or specific intent. There were two of them that identified assault with intent to kill an assault. We're dealing with a categorical approach, aren't we? Yes, Your Honor. Absolutely. So we're looking at the element. No issues of visibility or indivisibility or anything like that in this case? No. I don't think there's any quarrel about the visibility. So it's a categorical approach. That's what we're looking at. A categorical approach. I mean, you can't look at the facts underlying this event. You cannot. Okay. No, but you can look at the elements, and when you're looking at the elements, you look at the minimum conduct that the conductor actually punished. And I think the cases speak loudly on that point. You're saying it can't be committed negligently or recklessly. It can't be. As a matter of law. As a matter of law. And as Judge Wilkinson mentioned, it's not the assault element that we have the issue with. It's the inflicting injury by strangulation. Those elements cannot be committed with anything less than purpose or knowledge. One of the reasons is not just the cases, but that's what logic suggests. It naturally is very difficult to describe one person, because there has to be an actor here. There has to be a defendant and there has to be a victim. It's very difficult to naturally describe someone as strangling another or assaulting another, or inflicting injury by strangulation in a way that is negligent, that is culpably negligent as to the strangulation. The defense points to this New Jersey case called O'Carroll. But that case didn't hold that New Jerseyans believed that people strangled people negligently. What it explained was that you can strangle people with recklessness as to whether that would cause a death. In other words, you intend to strangle somebody, but you don't expect them to die. In that case, the defendant was defending. I wrapped a cord around the victim's neck to stop her from stabbing me with a knife, and I was not sure she was going to die. The defense was not, I didn't know, had the telephone cord or that her neck was there. It's counterintuitive to the point of perhaps absurdity to speak of a negligent strangulation. It's difficult to see what purpose that would serve. If you think about the car accident analogy the defense has used, it would be a defense. You could say, well, I knew I was negligently driving that car. I knew I was recklessly driving that car and going 80 in a 25-mile-an-hour zone. But I didn't foresee the seatbelt wrapping around the victim's neck as a ligature, and that would be a defense if culpable negligence were the standard. Well, I mean, I can see plenty of cases where you negligently strike a police officer's car, and that's what the defense is pointing to. But to me, there's a world of difference between hitting another car and taking another human being and strangle them and inflicting physical injury on them. I mean, those seem to me to be like comparing apples and oranges. I mean, car accidents are classic cases of negligence, and that's what Simmons is all about. And nobody would ever contend otherwise. And it doesn't matter whether it's an officer's car. It can be struck negligently. But this is a totally different situation. This is taking another human being, strangling them and inflicting physical injury, and the person there had to know what they were doing. That's not negligence. They knew what they were up to. And all of the cases and the jury instructions and the submitted cases reinforce that very basic point. Absolutely, Your Honor, and I think the jury instructions especially, they do corroborate that. I do want to respond to the defense point about them being identical. Are the jury instructions the law of North Carolina? Well, the jury instructions, in this case, we have the jury instructions quoted with approval by an intermediate appellate court in Brixton. You didn't answer my question. Oh, I'm sorry. You must not be able to hear. Are jury instructions the law in North Carolina? Well, they're evidence of the law, Your Honor. I'm sorry if I don't understand your question. It's a yes or no answer, I think. They're not. I don't believe that the court is absolutely valid. There might be some carries of weight here. I'm not saying they don't, but it seems like everybody's arguing about jury instructions. I mean, jury instructions, lawyers fight over them before they go to the jury and the judge bends them and changes them. I've been in court with them a few times. I know something about jury instructions. I apologize, Your Honor. I didn't understand your question. No, I don't. My question was, are jury instructions the law? I don't believe that. You got recommended jury instructions probably that some committee of lawyers wrote up or something. Yes, Your Honor. That kind of thing. In this case. That are sent to judges and lawyers to help them out as they go through cases. But most of the time they're not adopted by the legislature and signed into law, are they? That is absolutely true. They were not adopted by the legislature. I do think in this case they accurately state the law, and we have some evidence beyond their mere existence of that because we have State v. Brixton upholding jury instructions. You're citing them as if they are the law. I just wouldn't understand that. I don't mean to do that, Your Honor. What I think they do is they show good evidence of how. It almost sounds like you're getting into the modified categorical approach. I don't think so, Your Honor. Even under the categorical approach. That's where you can look at the instructions and the indictments and the plea agreements and all that stuff. So I'm using them for a somewhat different purpose here, which is as evidence of how in practice these cases are prosecuted in North Carolina. Who wrote them up? Tell me that. Who wrote these jury instructions that you're relying on? I believe it's a committee that has input from the courts. A committee? Yes, Your Honor. Some committee of lawyers and judges? I believe so. Were they promulgated and approved by the Supreme Court of North Carolina or by the legislature? I don't believe so. Okay. That said, we do have some evidence that they are rather routinely used. And the court is a trial court. Its obligation is to accurately instruct the jury as to the law. And here they were upheld in United States v. Brixton. And I don't want to belabor the point, but I do mention that they are different in the assault by inflicting injury. Judge King is correct. They're not law in the sense that they haven't been adopted by a legislative body and they haven't been formally incorporated into a court opinion. So I guess you're using them as just one point of illumination along with many others, which are more significant. But I think that Judge King is right. We can't just lean and rely on the jury instructions as if they are a matter of law. He's got to be correct in that. They're at most a bit of illumination as to what the North Carolina statute requires. Absolutely, Your Honor. These are all points that I think this court should consider together. You have a unanimous body of cases. Over the course, it is a relatively new statute, but it's still been around for two decades almost. How long was it adopted? 2004, Your Honor. You have the jury instructions. And you have what I think several of Your Honors have alluded to, which is it strains ordinary use of language to construe it differently. The Supreme Court or the Court of Appeals of North Carolina in Brixton held we interpret this statute consistently with common sense, this particular statute. Repeat that, please. We interpret it consistently with what? Common sense, Your Honor. Common sense does play a role in the interpretation of statutes. And against that backdrop, it's against that backdrop that we have the absence of any cases applying it to a lesser menfrea. We have the absence of any legislative pronouncement that a lesser menfrea is sufficient. We have the absence of any attempt to apply it to a lesser menfrea. And we have the absence of even any dicta in one of these cases applying this statute stating that a lesser menfrea is sufficient. And it's in that, under those circumstances, I think this court can say with confidence that there's no realistic probability that North Carolina would prosecute as assault inflicting injury by strangulation, an offense that requires less than purpose or knowledge. And if the court has no further questions, I will yield the balance of my time back to the court. All right. Any further questions? Judge King, do you have any further questions? None, Your Honor. Judge Quattlebaum, do you have any further questions? No, I'm fine, too. Thank you. Thank you, Your Honor. I will be— Ms. Hoffman, you have some rebuttal time. Yes, thank you, Your Honor. I will be brief. I just would like to address a couple of points that the government made. I agree with the government that the jury instructions here inform our inquiry, but I think that's also why the statutory language is so important, because the only other case in which this court has found— well, the only other two cases in which this court has found an additional intent element has been in Townsend, and it has been in the unpublished case of Smith that I mentioned, which was the assault by secret. Counsel, the overall lesson that you get from the Supreme Court is there should be some realistic possibility that North Carolina would use this statute in the way that you say it might. In other words, that it would use it in a culpable negligence situation. Those are the words—I don't know whether it's Duenas-Alvarez or whatever— but the court doesn't want us to stray that far from common sense, and therefore they ask this question at the end of the day. Is there a realistic possibility that North Carolina would seek to prosecute these cases on a culpable negligence theory when they have never before done so? Your Honor, I think that if this court were to find that, it would be in direct contradiction to Simmons and Aparicio-Soraya. No, because we have indicated that Simmons, there is a realistic possibility that someone could ram into a police car and never intended to do so. Your Honor, but the case— You've relied so much on Simmons, and that is just a very, very different situation, because everybody agrees that car accidents, a lot of them anyway, involve negligence. But I don't understand, because you can't transfer running into a police car with somebody who's strangulating somebody and inflicting physical injury on them. The one person might not intend what was doing. The other person could not help but know what he or she was doing. Your Honor, I think in the car accident example, which we provided in our briefing, in a car accident, someone could be hit and strangled with a seatbelt. We provided two cases, not in North Carolina, admittedly, in which there were assaults that were determined, and as part of the injury, it was determined that the person had been strangled by the seatbelt. I don't think that it is outside the realm of common sense for us to look at those examples. I think, if I can also just point— We're not talking about strangulation by a seatbelt, and those haven't been submitted under this statute. But it could be, Your Honor, and that's the point of the categorical approach. The categorical approach says that if the possible conduct falls under the realm of the generic offense, then it is not a crime of violence. The possible conduct can't be just purely imaginary. It can't be a figment of the imagination. The possible conduct has to have some roots that are anchored in reality. Your Honor, I believe that my example— That's what they're saying, is that you can't go and just theorize about this and that. There has to be a touchstone in reality. I understand, Your Honor. If I can just make one further point here on the instructions, I would note that in Townsend, this court noted as another example that affirmative defenses to the offense were voluntary intoxication. And I would note that in doing my research in preparation for the argument yesterday, I did locate an unpublished North Carolina Court of Appeals case, State v. Stevens, in which it determined in an APHIS case, a physical injury by strangulation case, that a voluntary intoxication instruction is not permitted because it is not a specific intent offense. Of course, we know here that we have been arguing that it is a culpable negligence offense. And again, while the instructions are not the law, they do inform here. And I think where this court found—excuse me, I'm just about over. I'll end here unless there are any other questions. No, please, please finish your point. Thank you, Your Honor. I was just going to end by saying that in Townsend, when this court found that it was an important element that an affirmative defense, such as a voluntary intoxication, could defend against that particular offense with a specific intent to kill element, that the North Carolina Court of Appeals in State v. Stevens, which is 725 Southeast 2nd 922, that a voluntary intoxication instruction is not appropriate in an APHIS offense. And for that reason, I would say— All right. Yes, Your Honor. Thank you. Judge Wilkinson, can I ask one follow-up, please? Counsel, you had said in response to one of Judge Wilkinson's questions that Supreme Court tells us that we should look to see whether there's a reasonable possibility that North Carolina would prosecute for culpable negligence. And you said that would be inconsistent with Simmons. And there was a discussion. I understand that point. I think you were going to say another case, and I just wanted to make sure I had that case for any further review I'm doing. It was United States v. Aparicio-Soraya, Your Honor. And also in our briefing, we listed United States v. Titties, Ramos, which is a 10th Circuit case, Ramos v. the Attorney General, which is an 11th Circuit case. I appreciate the case, so thank you. Thank you very much. Thank you, Your Honors. Thank you both very much. We're sorry we can't come down and shake your hands, but we appreciate you being here.
judges: J. Harvie Wilkinson III, Robert B. King, A. Marvin Quattlebaum Jr.